### In re LITTMAN et al.

#### (District Court, E. D. Pennsylvania. February 17, 1908.)

#### No. 2,144.

BANKRUPTCY—PROCEDURE—CERTIFIED QUESTION—FINDINGS—REVIEW.

Where a referee's finding in bankruptcy that no partnership existed between two persons alleged to constitute a bankrupt firm was based on conflicting evidence, such finding will not be reversed on certificate to the district judge, unless it appears from the evidence that the referee was clearly wrong.

In Bankruptcy.

The following is the opinion of Hoffman, Referee:

To the Honorable the Judges of the Said Court:

The referee, to whom was referred the answer of Joseph Zaretsky to the petition of Joseph Littman, individually on behalf of the firm of Joseph Littman and Joseph Zaretsky, trading as Littman and Zaretsky, upon which Joseph Zaretsky was commanded to show cause why said firm should not be adjudicated bankrupt, with an order that the referee should take testimony and report whether or not the said Joseph Zaretsky and the firm of Littman and Zaretsky are insolvent; with the further order that the referee take such steps as may be necessary for the administration of the partnership assets, respectfully reports that the questions involved are: (1) Whether or not Joseph Zaretsky at any time was a partner of the said Joseph Littman. (2) If he was not a partner at the time of the contraction of the indebtedness to the Consumers' Brewing Company, did the said Joseph Zaretsky subsequently become a partner of Joseph Littman, and is he, as is contended in his behalf, entitled to enforce a claim as a partner against the fund realized from the sale of the license taken out in the joint name of Littman and Zaretsky?

Pursuant to the reference, the referee held a meeting on March 15, 1905, and on March 29th, April 7th, and May 24th, which meetings were attended by Reuben O. Moon, Esq., attorney for Consumers' Brewing Company, Samuel P. Tull, Esq., and Jay H. Gratz, Esq., attorneys for Joseph Zaretsky, and Benj. Dintenfass, Esq., attorney for Joseph Littman. The witnesses examined were Joseph Littman, James V. O'Neill, M. J. Welsh, Joseph Zaretsky, and Charles Palvor, and the testimony taken appears in the schedules hereto annexed.

From the testimony taken before him, the referee finds the following facts: The Consumers' Brewing Company were creditors of an Italian, by the name of Solino, who was the proprietor of a saloon at Eighth and Wharton streets, Philadelphia. Solino was in financial difficulties, and a committee of creditors was appointed to look after his affairs, of which committee Mr. Foster, president of the Consumers' Brewing Company, was chairman. The sale of the license of Solino was under the control of the Consumers' Brewing Company, who acted through their agent, James V. O'Neill. On the 16th of September, 1904, Mr. O'Neill was called upon by Joseph Zaretsky and Joseph Littman.

According to the testimony of Joseph Zaretsky (page 39) Zaretsky had not previously known Littman, but made his acquaintance on this day. Littman suggested to Zaretsky that they should jointly take this saloon, and for that purpose they called upon Mr. O'Neill. Mr. O'Neill told them that that day was the last day for filing applications, and, without delaying to look at the place, Zaretsky put up a deposit to bind the bargain, the bargain being that the license should be transferred to them for a consideration of $8,000, of which $7,000 was to be loaned to them by the Consumers' Brewing Company on their note, and $1,000 to be paid in cash. The application was accordingly made in the name of Littman and Zaretsky. On the 26th of September the license was transferred in accordance with the application, and on the same day Zaretsky went with Littman to view the premises. On the view of the premises, Zaretsky became dissatisfied with the place, and, according to his testimony, he found the place "without stock and very dirty and sloppy." According to the testimony of Zaretsky, he testified: "I came back and there was supposed to be a settlement, so I came back and told Mr. O'Neill. I would not take the place because the place is not worth that. That is the first thing. It is very dirty, and no stock at all, so I will back out. Q. Mr. O'Neill said what? A. He said I lose that $50 deposit, and I said I would lose it, and I didn't want the place." After this occurrence negotiations were had between Littman and O'Neill which resulted in Mr. O'Neill agreeing to increase the amount of cash advanced by the Consumers' Brewing Company on the individual note of Joseph Littman from the original amount fixed of $7,000 to $7,400, Littman to pay the balance of $8,000, or $600, in cash. This amount of money was furnished by Littman with the knowledge of Zaretsky, and understanding that at the next license court the transfer should be allowed so that the license should be made to the name of Joseph Littman. Subsequent to this, it appears from his testimony that Joseph Zaretsky took part in the management of the saloon, and furnished, for the purpose of management, various sums of money aggregating the sum of $600, that were used in the purchase of stock and other running expenses. The testimony of Zaretsky was that he was taken into partnership by Littman, but he does not allege any written articles of partnership, nor does he allege any date or conversation in which any agreement of partnership was had between them. On the contrary, Joseph Littman testified that he never entered into partnership with Zaretsky, but employed him as a bartender at $10 per week. This testimony of Littman is confirmed by the testimony of O'Neill, who testified (page 26): "Zaretsky said as long as Littman was going to run the saloon, why not give him a job as a bartender. He said this to me. We said, 'We have nothing to do with that. You will have to speak to Littman.' * * * Q. Did you visit the place after that? A. I visited it three times. Twice I saw Mr. Zaretsky there, and I asked him what he was doing there, and he said he was the bartender." O'Neill further testified that "when you loaned this money to Littman (page 32) and put the deal through with Littman alone after the license court had passed on the matter, you did it on the assumption that you were dealing with Littman, individually, didn't you? A. I did it because Mr. Zaretsky told me that he would not become a partner to the business, and that he would sign the necessary papers to transfer the business to Littman individually. Q. Then you did deal with Littman on the assumption that you were acting with him alone? A. Yes." The conversation in which Zaretsky told O'Neill that he was a bartender occurred about the 6th or 7th of October, at which date Littman and Zaretsky began to run the saloon. Zaretsky denied specifically the testimony of Littman that he acted as bartender and received $10 per week. He testified that he only drew out $5 per week, the same as Littman, and he also denied, specifically, all the interviews and conversations testified to by O'Neill. The only testimony confirmatory of Zaretsky's contention that he was a partner is the testimony of the witness Welsh, a driver of a beer wagon. He said he called at the saloon to inquire if they wanted to purchase beer, and found Zaretsky behind the bar. He said to him, "I am a partner.".

Law. The referee has carefully reviewed all the testimony. These excerpts give the full force and effect of all that was testified to. From this testimony the referee is asked to find on behalf of Joseph Zaretsky that a partnership

subsequent to the transfer of the license was entered into by Zaretsky, and that the only debts which he is liable for are those contracted after that date, and that he has the full rights of a partner to an accounting for the value of the license without any responsibility for the indebtedness on the note of Joseph Littman to the Consumers' Brewing Company. The referee does not find from the testimony any evidence upon which a partnership could be established as against Littman and the Consumers' Brewing Company, who furnished $7,400 in cash under the assurance that they were dealing exclusively with Joseph Littman. It is not therefore necessary to go into the doctrine of equitable estoppel as to the enforcement of Zaretsky's right as a partner if the partnership were established. The testimony of Zaretsky does not even show a fact from which there could be a legal implication of a partnership, nor does it show a contract of partnership, and in such circumstances as exist in this case a contract of partnership must be clearly proven. In this case there was no division of profits, nor any alleged arrangement for the division of profits, nor responsibility for losses, and, in addition to this, there is Littman's contradiction that he had formed a partnership agreement with Zaretsky. "In an action to hold several persons liable as partners the declarations of some of the defendants as to a partnership is not evidence as to the others." Walker v. Tupper et al., 152 Pa. 1, 25 Atl. 172; Edwards v. Tracy, 62 Pa. 374. A full review of the facts necessary to prove a partnership in contemplation of law will be found in the following Pennsylvania cases: Gibbs' Estate, 157 Pa. 59, 27 Atl. 383, 22 L. R. A. 276; Hallstead v. Coleman, 143 Pa. 353, 22 Atl. 977, 13 L. R. A. 370, and numerous cases cited in the authorities. The referee is clearly of opinion that the only claim that can be made by Zaretsky is as an ordinary creditor of the bankrupt estate. No testimony was taken as to his solvency or insolvency, nor was it urged on behalf of the creditors that he was a partner. The referee therefore finds that the petition to have Zaretsky declared a bankrupt should be dismissed.

Reuben O. Moon and Francis J. Mancely, for creditors.
Samuel P. Tull and Edgar C. Van Dyke, for Zaretsky.

J. B. McPHERSON, District Judge. This case illustrates admirably the value of the rule that findings of fact made by a tribunal before whom the parties and the witnesses have appeared and been examined are not to be lightly set aside. From the record now before the court, which I have read attentively from beginning to end, it is very difficult, if not impossible, to ascertain with even a fair degree of certainty what really occurred during the three or four weeks under investigation. Both Littman and Zaretsky are of foreign extraction, apparently more at home in some other tongue than English, and the stenographer's notes seem frequently to indicate either that the questions of counsel were not accurately understood, or that the witness could not command sufficient English words to express his answers with clearness. Under such circumstances, experience has shown abundantly that it is almost essential that the witness should be seen and heard in order that one may feel a reasonable confidence that the answers have been understood in the sense intended by the speaker. Without the aid of sight and hearing, a mere transcript of his words may be nearly, if not quite, unintelligible, and at the best is likely to be confusing. In the present case, however, I have been able to see with sufficient distinctness, that there is a substantial conflict of testimony upon the vital point whether there was an oral agreement of partnership between Littman and Zaretsky that should affect the distribution of the fund arising from the receiver's sale, but I have found it impossible to

conclude that the referee was clearly wrong in finding that the fact of such partnership had not been established.

His ruling upon this point must therefore be affirmed, and the order should carry with it the dismissal of the petition so far as it may concern the alleged firm of Littman & Zaretsky, or the individual interest of Zaretsky himself.